UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION
_____

| | |
|---|---|
| LENWARD P. HEBERT, et al. | CIVIL ACTION NO. CV-03-1739-A |
| -vs- | JUDGE DRELL |
| SHERIFF RANDY MAXWELL, et al. | MAGISTRATE JUDGE KIRK |

R U L I N G

Before the Court are Plaintiffs' and Defendants' cross motions for summary judgment. Each party opposes the other's motion. (Doc. Nos. 40 and 43.) Plaintiffs request that the Court grant partial summary judgment in their favor on the issue of liability. (Doc. No. 39.) Defendants request summary judgment on the issue of qualified immunity. (Doc. No. 34.) On September 9, 2005, the Court held oral arguments on the parties' objections to the proposed findings, conclusions, and recommendations contained in the Magistrate Judge's report of June 3, 2005. (Doc. No. 58.) After reviewing the entire record and in concurring in part with the Magistrate Judge's findings under the applicable law, Plaintiffs' motion for summary judgment will be GRANTED IN PART and DENIED IN PART and Defendants' motion likewise will be GRANTED IN PART and DENIED IN PART. A separate judgment will issue accordingly.

<u>Background</u>

Plaintiffs Lenward Hebert (hereinafter "Mr. Hebert") and his wife, Darnell Hebert (collectively hereinafter "Plaintiffs") filed a civil rights complaint pursuant to 42 U.S.C. § 1983, asserting claims under the United States Constitution, the Louisiana constitution, and Louisiana state laws arising out of an incident of alleged false arrest and imprisonment. The defendants are Sheriff Randy Maxwell of Concordia Parish, Concordia Parish Deputy Jim Boyd, and the Louisiana Sheriffs' Law Enforcement Program, Sheriff Maxwell's insurer (collectively hereinafter "Defendants"). Plaintiffs assert their claims against Sheriff Maxwell and Deputy Boyd in both their official and individual capacities.

Mr. Hebert alleges Deputy Boyd illegally arrested him on March 22, 2003. He further alleges he was unlawfully detained by Sheriff Maxwell from the afternoon of March 22, 2003 until mid-morning on March 24, 2003, he was denied bond in violation of his Eighth Amendment rights, and he was subjected to unconstitutional conditions of confinement in the Concordia Parish jail. Plaintiffs request that the Court grant relief in the form of monetary damages, costs, legal interest, and attorney's fees. (Doc. No. 1.)

Defendants state that on March 22, 2003, the Sheriff's office received several calls about a suspicious vehicle at a local grocery store and again near a parish resident's cow pasture. (Doc. No. 34.) In response to these calls, Deputy Boyd was dispatched to investigate the vehicle and its driver. He found the vehicle parked beside the highway near the intersection of Louisiana state

highways 129 and 907. (Doc. Nos. 1 and 34.) The vehicle had a sign attached to the driver's door stating "United Utility Surveyors, LLC." (Doc. No. 34.) Deputy Boyd asked Mr. Hebert who he was and what he was doing. (Doc. Nos. 1 and 34). Deputy Boyd testified in his deposition that Mr. Hebert initially told him he was a surveyor before confessing to Deputy Boyd that he was a private investigator (Doc. No. 54, Ex. 2, p. 14). Mr. Hebert denies he told Deputy Boyd that he was a surveyor (Doc. No. 54, Ex. 1, pp. 55-56). It is undisputed that once Mr. Hebert said he was a private investigator, he refused to reveal any information about the subject of his investigation. (Doc. Nos. 1 and 34.) Mr. Hebert did provide Deputy Boyd with his Louisiana private investigator's license (which bore his photograph and driver's license number), his driver's license, his State Police Security Exemption Affidavit authorizing him to have tinted car windows, and his vehicle registration. (Doc. No. 54, Ex. 2, pp. 17-18, 29-30; Doc. No. 39, Ex. U.) He also gave Deputy Boyd his open water diver's licence, basic scuba diver's license, St. Charles Parish library card, identification card as security guard or watchman employed by a Maryland licensed private detective agency, and veteran's identification card. Deputy Boyd asked Mr. Hebert to explain why he had not notified the Sheriff's office of his presence in the parish in accordance with parish

custom and Mr. Hebert replied that he was not legally required to do so.[1]  (Doc. No. 1.)

Deputy Boyd then returned to his police vehicle where he made at least one phone call.  (Doc. Nos. 1 and 34.)  Deputy Boyd contacted Gene Tiffee, the landowner of the property adjacent to the highway (Doc. No. 1), who subsequently arrived at the scene.  Upon his arrival, Mr. Tiffee made a written statement, claiming that the land on which Mr. Hebert was parked belonged to Mr. Tiffee.  (Doc. No. 34.)[2]  Mr. Hebert claims that he then offered to move his vehicle off the land over which Mr. Tiffee claimed ownership, but he was precluded from doing so.  (Doc. No. 1.)

After Mr. Tiffee completed his statement to Deputy Boyd, the Deputy arrested Mr. Hebert for criminal trespass.  (Doc. Nos. 1 and 34.)  Deputy Boyd testified in his deposition that Sheriff Maxwell told him to arrest Mr. Hebert and hold him until they "found out more information." (Doc. No. 54, Ex. 2, p.19; Doc. No. 39, Ex. F, p. 16).  Mr. Hebert was taken to the Concordia Parish jail.  (Doc. Nos.

_____

[1] Sheriff Maxwell testified that most private investigators stop by his office, as a courtesy, to notify the Sheriff's office that they are working in the area, what type of vehicle they are driving, and what they look like in case someone calls the sheriff's office to complain of a stranger.  (Doc. No. 39, Ex. A, pp. 64-66.)  It is unknown whether Mr. Hebert was or was not aware of this "custom."

[2] Defendants would like the Court to believe  Mr. Tiffee's statement was an "affidavit." (Doc. No. 34.) However, the Court's legal dictionary defines an affidavit as "a voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths."  Black's Law Dictionary 58 (7th ed. 1999).  Since there is no evidence Mr. Tiffee swore to his statement and since Mr. Tiffee did not make his statement to an officer authorized to administer oaths, the Court does not afford the statement the legal weight that it would a true affidavit. Rather, the Court considers the statement to be just that, merely a statement.

1 and 34.)  There he was given two sheets, two towels, and two hand towels; he was permitted to call his wife; and he was placed in a holding cell known as "the tank." (Doc. Nos. 1 and 34.)  Mr. Hebert "informed [his wife] he had been arrested and not to come to the jail because he would not be let out until Monday." (Doc. No. 34.)  Mr. Hebert remained in the Concordia Parish Jail until Monday, March 24, 2003 when he was taken before a judge, permitted to post bond, and released. (Doc. Nos. 1 and 34.)  Even though the bond for criminal trespass was pre-set on a bond schedule, Mr. Hebert did not pay the bond until Monday, March 24, 2003. (Doc. Nos. 1 and 34.)  At Mr. Hebert's bail hearing, Deputy Cown told the presiding judge that Mr. Hebert had not been allowed to post bond during the weekend because Sheriff Maxwell had a "hold" on him until Monday.  (Doc. No. 39, Ex. Group 2, Ex. C (hearing transcript)).  Although Mr. Hebert apparently never received a probable cause hearing, he was detained at the jail for fewer than forty-eight (48) hours.   The prosecutor subsequently dropped all criminal charges against Mr. Hebert.

Mr. Hebert complains about the conditions in which he lived at the jail. The complaint states, in part, that "he was forced to live in conditions that were deplorable, inhumane, and completely unnecessary . . . he was forced to live in isolation . . . for two (2) days and two (2) nights.  The cell reeked with the smell of urine and feces.  There was [sic] urine and feces on the walls and floors and urine and feces encrusted toilet paper, ashes, dirt, and cigarette butts all over the floor." (Doc. No. 1.)  Mr. Hebert claims he was not permitted to exercise with the

other inmates and was neither permitted to shower nor given soap, toilet paper, a toothbrush, or toothpaste until shortly before he was released. (Doc. No. 1.) Further, he says he was unable to sleep because the lights were left on in his cell and because too much noise from outside permeated his cell. (Doc. No.1.) Defendants deny that plaintiffs have accurately represented the conditions at the jail. (Doc. No. 34.)

Mr. Hebert also complains about the food he was served while incarcerated. Both parties agree that Mr. Hebert received three meals per day. (Doc. Nos. 1 and 34.) Mr. Hebert argues that the food was cold, that it had been sitting out for an extended period of time prior to his receipt of it, and that the only edible item he received was a biscuit. (Doc. No. 1.) Additionally, he alleges that the only liquid he received was a cup of tea with each meal. (Doc. No.1.)

In response to Mr. Hebert's complaints, defendants assert that if they are potentially liable for any of the claims made by plaintiffs, they are entitled to and protected by qualified immunity. (Doc. No. 6.)

Law and Analysis:

I.      Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure mandates that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file . . . together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

> A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the movant's position will not be sufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-313, 106 S.Ct. 2548 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992).

II.    Qualified Immunity and Official and Individual Capacity Suits

Qualified immunity protects officials acting in their official capacities from litigation and liability so long as their conduct does not violate clearly established

federal statutory or constitutional rights "of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Where the defendant asserts a claim of qualified immunity, he bears the burden to prove that he is entitled to immunity because he acted in good faith and within the scope of his authority. Once the defendant makes this showing, the burden shifts to the plaintiff to establish that the official's conduct violated clearly established law.[3] Oladipupo v. Austin, 104 F. Supp. 2d 626, 634 n.6 (W.D. La. 2000)(citing Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992)). In the Fifth Circuit, the burden does not then shift back to the defendant to prove that he did not violate a clearly established right. Rather, the plaintiff bears that reverse burden. Id.

For a party to be liable under 42 U.S.C. § 1983, the defendant must have been delegated policy-making authority under state law. To support a claim under § 1983, the plaintiff must show that (1) the plaintiff was mistreated by a person acting under color of state law, and (2) the conduct deprived the plaintiff of rights protected by federal statutes or the Constitution. Oladipupo ,104 F. Supp. 2d at 633. In the current action before this Court, the parties do not disagree that Sheriff Maxwell and Deputy Boyd were acting under color of state law; rather, the parties disagree as to whether Mr. Hebert's constitutional rights were violated.

---

[3] Whether an official violated a clearly established law is determined by the clarity of the law at the time of the alleged violation. Hare, 135 F.3d at 325.

A § 1983 suit naming defendants in their official capacities does not result in personal liability on the individual defendants. Hafer v. Melo, 502 U.S. 21, 25 112 S.Ct. 358, 361-62 (1991). Rather, the suit is duplicative of an action against the municipality that the officer serves as an agent. City of St. Louis v. Praprotnik, 485 U.S. 112, 108 S.Ct. 915 (1988). See also Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 483 (5th Cir. 2000). Therefore, the governmental entity is considered to be the real party in interest and the suit should be treated as one against the governing body. Hafer, 502 U.S. at 25. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation." Id. (quoting Kentucky v. Graham, 473 U.S. 159,166, 105 S.Ct. 3099, 3105). Because a § 1983 suit naming defendants in their official capacities is treated as a suit against the government, the defendant possesses the same immunities that the entity possesses. Id. Further, if the defendant is liable in the action, the plaintiff can only recover his damages from the entity who employs the official. Turner, 229 F.3d at 483.

A sheriff's office is not a state agency under Louisiana state law. La. R.S. 13:5102. Rather, it is a political subdivision. La. R.S. 13:5102. Further, the Sheriff is an "autonomous local government official separate and apart from the parish he serves." Victoria W. V. Larpenter, 205 F. Supp. 2d 580, 586 n.16 (E.D. La. 2002)(citing Burge v. Parish of St. Tammany, 187 F.3d 452, 469 (5th Cir. 1999)). Therefore, a suit against a sheriff is not a suit against the state, but a suit against

a political subdivision, the sheriff's office. Because of the unusual treatment given to sheriffs and sheriffs' offices under Louisiana law, when a sheriff is sued in his official capacity, the judgment can only be recovered from the sheriff's liability insurer or the public funds controlled by the sheriff. Larpenter, 205 F. Supp. 2d at 586 n.16. The state of Louisiana is not liable for any damages arising from a sheriff's actions taken within the scope of his official duties. La. R.S. 42:1441. Additionally, a sheriff sued in his official capacity is not personally liable for any damages assessed. Larpenter, 205 F.Supp. 2d at 586.

In contrast to official capacity suits, personal capacity suits seek to impose individual liability on a government officer for actions taken under the color of state law. Section 1983 recognizes such suits if the plaintiff can show that the official, acting under color of state law, violated clearly established law and thereby caused the deprivation of a federal right. A damages award against an officer in his personal capacity may only be executed on the official's personal assets. Turner, 229 F.3d at 483. However, the governmental official may assert a defense of qualified immunity. Hafer, 502 U.S. at 25. Officials are entitled to qualified immunity if their actions reasonably could have been thought consistent with the right they are alleged to have violated. Richardson v. Oldham, 12 F.3d 1373, 1380-81 (5th Cir. 1994).

III.     <u>Probable Cause to Arrest and Imprison Mr. Hebert</u>

_____A warrantless arrest violates a person's Fourth and Fourteenth Amendment rights if the arresting officer lacked probable cause to believe that the suspect committed a crime.  <u>Bodzin v. City of Dallas,</u> 768 F.2d 722, 724 (5th Cir. 1985).  See also <u>Tennessee v. Garner,</u> 471, U.S. 1, 105 S.Ct. 1694 (1985).  Probable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable and trustworthy information, are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense.  <u>Landry v. Duncan,</u> 04-1432 (La. App. 5 Cir. 4/26/05), 902 So. 2d 1098, 1102-1103.

A plaintiff's claims of false arrest[4] and false imprisonment[5] without probable cause implicate the Fourth and Fourteenth Amendments.  <u>Thomas v. Kippermann,</u> 846 F.2d 1009, 1011 (5th Cir. 1988).  When bringing claims for false arrest and false imprisonment, the plaintiff has the burden to show that the arresting officer lacked probable cause to effectuate that arrest (<u>Brown v. Lyford,</u>

---

[4] Mr. Hebert was arrested for criminal trespass.  At the time Mr. Hebert was arrested for criminal trespass, La. R.S. 14:63 stated:

    (B)  No person shall intentionally enter immovable property owned by another:

        (1)  When he knows his entry is unauthorized, or

        (2)  Under circumstances where he reasonably should know his entry is unauthorized.

    (C) (2)  It shall be an affirmative defense to a prosecution pursuant to Subsection B(2) to show that property was not adequately posted in accordance with Subsections D or E, and F of this Section.

    (E)  In order for any immovable property other than forest land to be adequately posted . . . the owner, lessee, or person having the written permission of the owner or lessee shall post the property by any one of the following methods. . . .

[5] "False imprisonment is the intentional confinement or detention of another, without his consent and without proper legal authority."  La. R.S. art. 14:46.

243 F.3d 185, 189 (5th Cir. 2001)) and that the arrest resulted in injury. <u>Saucier v.</u> <u>Players Lake Charles, L.L.C.,</u> 99-1196 (La. App. 3 Cir. 12/22/99), 751 So.2d 843.

Mr. Hebert, who has the burden to show that Deputy Boyd lacked probable cause, asserts that Deputy Boyd lacked probable cause to arrest him for criminal trespass. Mr. Hebert's claim is based on the fact that the criminal trespass statute is a specific intent statute and he lacked the intent to trespass. (Doc. No. 39.) Deputy Boyd disagrees, claiming that he did have probable cause. Deputy Boyd cites reports suggesting Mr. Hebert was engaged in "suspicious activity"– the sign on Mr. Hebert's truck indicating he was a surveyor when in fact he was not, and the statement from Gene Tiffee that Mr. Hebert was trespassing (Doc. No. 43.) The Court does not consider Plaintiffs' evidence sufficient to show they are entitled to a judgment as a matter of law regarding the probable cause to arrest issue. The pleadings and evidence before the Court leave too many unanswered questions for the Court to take such a definitive action.

There are several significant issues the Court thinks remain unresolved. First, there is no testimony from Gene Tiffee. Clearly, his involvement in the incident alongside the highway, particularly as his involvement relates to the timing and sequence of the events surrounding the arrest, are crucial to the determination of whether Deputy Boyd had probable cause to arrest Mr. Hebert. Curiously, despite his importance to these events, neither party has provided any deposition testimony from the alleged landowner. Additionally, there is no evidence locating the boundary line between the public highway and Mr. Tiffee's

12

land.  During the oral argument held in this matter on September 8, 2005, defense counsel told the Court: "even as we stand here today, nobody knows, I don't know" where the boundary line is. (Oral arg. p. 23 ln 13-14.)  The Court considers it peculiar that no one has investigated where the boundary line lies.  Surely whether Mr. Hebert was parked one millimeter or twenty feet over the boundary line would make a difference as to whether probable cause existed to suspect he was trespassing.  The photographs (Exhibits JB-7--B-12) show the parked vehicle sitting generally over the "road ditch" on a flat area.  Road ditches are usually part of the state right of way on a state highway. La. R.S. 48:223.  Additionally, La. R.S. 48:220 references the way such right of ways are determined.  And yet, there is no document here filed from the State Department of Transportation, the Clerk of the Court, or any official body as to precisely where that right of way ends.

While the Court recognizes the strong similarities this case bears to Bodzin v. City of Dallas, 768 F.2d 722 (5th Cir. 1985), in which the Fifth Circuit determined that probable cause existed for an arrest despite a dispute regarding the boundary line between public and private property, significant differences between Bodzin and the matter before this Court preclude the Court from relying on Bodzin to make its determination.  The principal difference involves the role the alleged landowner played in the probable cause formulation.  See also Kelley v. Myler, 149 F.3d 641 (7th Cir. 1998); Ryans v. Gresham, 768 F.2d 722 (E.D. Tex. 1998).  In each of these cases, it was the complaining party, the party who asserted that the trespasser was on private property, who summoned the law

enforcement officers to the scene. In the case before the Court, the law enforcement officer summoned the so-called complaining party.

Since the evidence remains unclear about why Mr. Tiffee was summoned to the scene of the subsequent arrest, the Court declines to grant Plaintiffs' motion for summary judgment regarding the alleged lack of probable cause to arrest Mr. Hebert. It is also not clear whether Deputy Boyd acted in good faith and reasonably thought he had probable cause to believe Mr. Hebert was actually trespassing. Therefore, Defendants are not entitled to summary judgment on the issue of qualified immunity on this claim.

IV.    Eighth Amendment Right to Post Bond Pursuant to Misdemeanor Bond Schedule

Plaintiffs claim that Defendants denied Mr. Hebert the right to post bond for about 48 hours, even though he was only charged with a misdemeanor, for which the district court maintained a set bail amount in a misdemeanor bail schedule.

The Eighth Amendment does not establish an absolute right to bail, but does guarantee a limited right to bail by proscribing excessive bail. August v. Roemer, 771 F.Supp. 1458 (E.D. La. 1991). The limited right to bail includes (1) a fundamental due process right to have the eligibility for bail considered by an impartial decision-maker, and (2) a fundamental due process right not to be deprived of the opportunity to post bail and be released. Id. at 1465. Louisiana law sets forth a statutory right to bail in misdemeanor cases. Pursuant to La.

14

Code Crim. P. art. 341, when a bail schedule is established by court order for misdemeanor charges, a person charged with a misdemeanor has the *right* either to pay bail according to the bail schedule or to demand a special order fixing his bail. The same provision provides that a copy of the bail schedule must be provided to each sheriff's office.

According to Mr. Hebert, the defendants deprived him of his constitutional and statutory right to post bail and be released by detaining him for about 48 hours and not informing him of the bail set for his charge by the court ordered bail schedule. (Doc. No. 39, Ex. F–Ex. RJM 9.) Plaintiffs have presented the Court with an affidavit by Concordia Parish Sheriff's Deputy Dale Cown (Doc. No. 39, Ex. X) stating that, although the Deputy has no recollection of the events surrounding Mr. Hebert's detention, he agreed that he made the statements reflected in the transcript of Mr. Hebert's bond hearing before a magistrate judge. At that hearing, the judge asked why Mr. Hebert had not posted the court-ordered, pre-set bond. Mr. Hebert replied he had requested to be allowed to post bond and had been told he was not permitted to do so. Deputy Cown then explained to the judge that Mr. Hebert had not been permitted to post bond because Sheriff Maxwell had a "hold" on Mr. Hebert until Monday. (Doc. No. 39, Ex. X.)

Sheriff Maxwell testified he has the legal authority to detain anyone if he is not sure of the arrestee's identity. (Doc. No. 39, Ex. Group 1. Ex. A. pp 27-29.) Sheriff Maxwell also stated Mr. Hebert could have posted bond pursuant to the misdemeanor bond schedule after the Sheriff's office had "determined exactly

who he was." However, according to Sheriff Maxwell, Mr. Hebert made no request to post bond and therefore he remained in the jail until Monday morning. (Doc. No. 39, Ex. Group 1, Ex. A, pp. 30-33.)

The Court does not find Sheriff Maxwell's claims credible.[6] It stretches the Court's imagination to believe that Mr. Hebert chose to remain in jail, particularly if the conditions of confinement were as he describes them to be, for nearly two full days rather than to request bail. Further, the Court has been unable to locate any Louisiana case law or statute giving the Sheriff the authority to detain an arrestee for nearly 48 hours in order to "determine exactly who he was." Even if the Court accepted that the Sheriff might briefly detain an arrestee at the jail for the purposes of determining the arrestee's identity, the Court does not think Sheriff Maxwell needed nearly 48 hours to accomplish this purpose. As noted earlier, Mr. Hebert provided the Sheriff's office with the following pieces of identification on the afternoon of his arrest: (1) his Louisiana private investigator's license (which bore his photograph and driver's license number); (2) his driver's license; (3) his State Police Security Exemption Affidavit authorizing him to have tinted car windows; (4) his vehicle registration; (5) his open water diver's licence; (6) his basic scuba diver's license; (7) his St. Charles Parish library card; (8) his identification card as security guard or watchman

---

[6] Perhaps Sherlock Holmes best addressed the types of claims that Sheriff Maxwell wants the Court to believe in the following quotation: "How often have I said to you that when you have eliminated the impossible, whatever remains, however improbable, must be the truth." Sir Arthur Conan Doyle, A Study in Scarlet (1887).

employed by a Maryland licensed private detective agency; and (9) his veteran's identification card. The Court cannot imagine what additional piece or pieces of identification Sheriff Maxwell's office might require to identify this arrestee, but it is certain that these items provided sufficient identifying data to launch a computer, internet or National Crime Information Center check and clearance.

For the reasons given in the preceding paragraph, the Court finds that Defendants violated Mr. Hebert's right to post bond in accordance with the court-ordered misdemeanor bond schedule. As a result, Plaintiffs' motion for summary judgment on this issue will be granted. Further, the Court finds that Sheriff Maxwell has not presented any evidence to the Court showing that he had the authority, or could have reasonably believed that he had the authority, to hold Mr. Hebert for nearly 48 hours. Therefore, Defendants' Motion for Summary Judgment requesting qualified immunity on this issue must denied.

V.    Individual Capacity § 1983 Claims for Unconstitutional Conditions of Confinement

————Convicted prisoners and pretrial detainees[7] rely on different constitutional provisions to protect their rights. Hare v. City of Corinth, MS, 74 F.3d 633 (5th Cir. 1996). While a convicted prisoner's claim for mistreatment is analyzed under the Eighth Amendment cruel and unusual punishment clause, a detainee's claim that he was subjected to unclean or unsanitary conditions in a jail or prison cell is

_____

[7] Pretrial detainees are those persons who have been charged with a crime, but not yet tried. An arrestee, a person who has been arrested but not yet charged, who asserts a complaint that he has been denied due process is addressed according to the same standards applied to a detainee's complaint. Nerren v. Livingston Police Dept., 86 F.3d 467, 472 (5th Cir. 1996).

examined according to the Fourteenth Amendment Due Process Clause. <u>Bell v. Wolfish,</u> 441 U.S. 520, 535, 99 S.Ct. 1861 (1979). See also <u>Whitnack v. Douglas County,</u> 16 F.3d 954, 957 (8th Cir. 1994). The Due Process Clause precludes the state from punishing a detainee who has not been adjudicated guilty. <u>Id.</u> Therefore, a pretrial detainee's rights are considered to be at least as great as the Eighth Amendment protections afforded to convicted prisoners. <u>Hare,</u> 74 F.3d at 639 (citing <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 244, 103 S.Ct. 2979 (1983)).

Liability under § 1983 for alleged violations of a detainee's rights can be premised on two theories of recovery: (1) that the conditions of confinement violated the detainee's rights or (2) that episodic acts or omissions of the officials violated the detainee's rights. <u>Scott v. Moore,</u> 114 F.3d 51, 53 (5th Cir. 1997). A conditions of confinement case involves a constitutional attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." <u>Hare,</u> 74 F.3d at 644. Such cases include those where the incarcerated plaintiff complains of inadequate food, heating or sanitary conditions. <u>Moore,</u>144 F.3d at 53. Since Mr. Hebert complains about the quality of the food, sleeping arrangements, and sanitation of his cell, the Court considers the current matter to be a complaint about the conditions of confinement only.

In a conditions of confinement case, the court must first determine whether the conditions are "imposed for the purpose of punishment." <u>Hamilton v. Lyons,</u> 74 F.3d 99, 104 (5th Cir. 1996)(citing <u>Bell</u>, 441 U.S. at 538). A court may find an intent to punish "upon direct proof of an expressed intent by detention facility officers to punish the pretrial detainee for the crime with which the detainee has been charged but not yet convicted." <u>Id.</u> Additionally, a court may infer a

punitive purpose "if the challenged condition or restriction is not reasonably related to a legitimate governmental objective." Hamilton, 74 F.3d at 104 (citing Bell,441 U.S. at 539). A restriction is reasonably related to the legitimate governmental objective if it is: (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that purpose. Hamilton, 74 F.3d at 104 n.3(citing Bell, 441 U.S. at 561). The Bell court observed: "If a restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Bell, 441 U.S. at 539 (adopted by the Fifth Circuit, Hamilton v. Lyons, 74 F.3d 99, 105(5th Cir. 1996)). One of the government's legitimate interests is managing its detention facilities. Smith v. Copeland, 87 F.3d 265, 268 (8th Cir. 1996)(citing Bell, 441 U.S. at 539). Additionally, there is a *de minimis*level of imposition with which the Constitution is not concerned. Id. While it is not perfectly clear where the *de minimis* imposition ends and the constitutional violation begins, several circuit courts have decided cases that provide parameters defining a constitutional violation.

The Supreme Court has noted that a filthy cell may be tolerable and not rise to the level of a constitutional violation where the detainee is held for a few days, but is intolerable, and thus unconstitutional, if the detainee is held for weeks or months. Hutt v. Finney, 437 U.S. 678, 687, 98 S.Ct. 2565 (1978). Many courts, considering the Supreme Court's emphasis on the length of exposure contrasted with the extent of the unsanitary conditions, determine that no constitutional violation has occurred. See Lyons, 74 F.3d at 107 (Fifth Circuit determining that a deprivation of mail, legal materials, sheets, and showers for three days did not

constitute a due process violation); <u>Owens v. Scott County Jail,</u> 328 F.3d 1026, 1027 (8th Cir. 2003)(remanding for the trial court to determine whether forcing a pre-trial detainee to sleep next to a toilet for five weeks was a constitutional violation); <u>Whitnack v. Douglas County,</u> 16 F.3d 954 (8th Cir. 1994)(ordering judgment for the defendant where plaintiff detainee complained about being held in a cell in which the toilet was "covered with dried feces on both the inside and outside, the sink was covered with hair and vomit, the floor was covered with garbage and rotting food, and the walls were covered with dried human mucus" for 24 hours because the detainee's ability to dispose of bodily waste was not interfered with); <u>Smith v. Copeland,</u> 87 F.3d 265 (8th Cir. 1996)(granting defendants judgment as a matter of law and finding no constitutional violation where detainee was held in solitary confinement without clothing or bedding, was denied food and water, and was exposed to raw sewage in his cell for four days because Smith was not exposed to disease, he did not suffer adverse effects from the exposure, and his exposure to the sewage was for a limited period of time)

A few have found constitutional violations. See <u>Howard v. Adkison,</u> 887 F.2d 134 (8th Cir. 1989)(holding that a prisoner held for two years in a cell filled with filth and human waste without being offered any cleaning supplies had asserted a constitutional violation); <u>Hall v. Dalton,</u> 16 F.3d 954 (8th Cir. 1994)(finding a due process violation where detainee was jailed in an overcrowded cell for 40 days, was required to sleep on the floor, and was not allowed sufficient exercise); <u>McBride v. Deer,</u> 240 F.3d 1287 (10th Cir. 2001)(finding an Eighth Amendment violation where prisoner was forced to live in a feces-covered cell for three days); <u>LaReau v. MacDougall,</u> 473 F.2d 974 (2nd Cir.

1972)(prisoner's Eighth Amendment rights were violated where he was forced to "live, eat, and perhaps sleep in close confines with his own human waste for five days); Oladipupo, 104 F.Supp. 2d at 639 (finding that forcing a detainee to sleep on the floor with a mattress or to sleep without a mattress, even for a short time, constitutes a due process violation).

Based on the above referenced precedents and the fine-line distinctions a court is asked to make to determine whether a due process violation has occurred, the Court lacks sufficient evidence of a due process violation to determine whether Plaintiffs are entitled to judgment as a matter of law on the conditions of confinement at the Concordia Parish Jail. Despite the Court's visceral response to Mr. Hebert's allegations of the conditions in "the tank," Mr. Hebert has not provided the Court with sufficient *evidence* demonstrating that the filth rose to the level that he alleges. Nor is it clear Mr. Hebert was denied soap, toilet paper, a toothbrush, toothpaste, and a shower. Since a party cannot rely on its pleadings to prevail in a summary judgment action, Mr. Hebert must have provided the Court with something more than the allegations of uninhabitable conditions for the Court to find in his favor. The Court considers there to be a genuine issue of material fact as to whether Mr. Hebert was given items such as toilet paper and a toothbrush, and whether the floor, toilet, and sink were as filthy as he alleges them to have been. Likewise, without knowing the actual conditions in "the tank," the Court cannot determine whether the Defendants acted reasonably and in good faith. As the actual conditions in which Mr. Hebert was detained remain disputed, the Court will allow the issues of conditions of confinement and qualified immunity to proceed toward trial.

VI.    <u>Damages</u>

    A.    Punitive Damages in Official Capacity Suits

In their motion for summary judgment, Defendants assert punitive damages cannot be assessed against them in their official capacities because an official capacity suit is comparable to a suit against the governmental entity and that governmental entities are immune from suit for punitive damages. (Doc. No. 34.)  In the above discussion, the court noted a suit against an official in his official capacity is treated as a suit against the governmental entity.  The Supreme Court has opined punitive damages are generally not available against a municipality. <u>City of Newport v. Fact Concerts, Inc.,</u> 453 U.S. 247, 260, 101 S.Ct. 2748 (1981).  In the <u>City of Newport</u> decision, Justice Blackman noted:

> punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill.  Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers.

<u>Id.</u> at 267.  The Fifth Circuit adopted this language in <u>Webster v. City of Houston,</u> 689 F.2d 1220, 1228 (5th Cir. 1982). See also <u>Louisiana Farms v. Louisiana Dept. of Wildlife & Fisheries,</u> 95-845 (La. App. 3 Cir. 1996), 685 So. 2d 1086, 1092 (stating that states and their agents, in their official capacities, are not "persons" under § 1983 and therefore are not liable for punitive damages and attorney fees). Likewise, punitive damages under § 1983 are not available against a political subdivision.  <u>Anderson v. Phelps,</u> 655 F.Supp. 560, 564 (M.D. La 1985).  However, an official remains potentially liable in suits against him in his individual capacity. <u>Smith v. Wade,</u> 461 U.S. 30, 36 103 S.Ct. 1625 (1983).

The law referenced above clearly shows that Defendants are not liable for punitive damages for any actions taken in their capacities as officials of a political subdivision. As a result, the Court will grant Defendants' motion for summary judgment on this issue and dismiss Plaintiffs' punitive damages claims against Defendants in their official capacities.

B.    Punitive Damages Recoverable Under Louisiana State Law for False Arrest and Imprisonment

Defendants challenge the Magistrate Judge's determination that punitive damages are recoverable under Louisiana state law for false arrest and false imprisonment. (Doc. No. 59). Unfortunately, at least one of the statutes Defendants cite in their objection was repealed nine years ago. La. Civ. Code art. 2315.3. The other relates to damages arising from drunk driving injuries, an issue not before the Court in this case. La. Civ. Code art. 2315.4.

Despite Defendants' failure to cite appropriate statutes, Defendants properly challenge the Magistrate's statements. Under Louisiana law, punitive damages are not available for state law claims unless expressly authorized by statute. Mosing v. Domas, 02-0012 (La. 2002); 830 So.2d 967, 974(citing International Harvester Credit Corp. v. Seale, 518 So. 2d 1039, 1041 (La. 1988). Additionally, civil statutes imposing damages intending to punish are rare. Seale, 518 So.2d at 1041. As neither party has cited a statute or case to the Court that would permit Plaintiffs to collect punitive damages on the state law claims before the Court, no punitive damages can be awarded on those claims, and summary judgment on this issue is appropriate.

## Conclusion

For the reasons listed above, the Court will deny Plaintiffs' motion for summary judgment on all issues except on the issue of whether Mr. Hebert's Eighth Amendment rights were violated when he was denied bail. Likewise, the Court will deny Defendants' motion for summary judgment on all issues except on the issues of punitive damages in official capacity suits and punitive damages arising from Plaintiffs' state law claims. A separate judgment will be issued accordingly.

_____SIGNED on this 30th day of September, 2005, at Alexandria, Louisiana.

Dee D. Drell
United States District Judge