WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

APR 17 2008

ROBERT H. SHEMWELL, CLERK
BY _____
                DEPUTY

# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| **LENWARD P. HEBERT, et al.** | **CIVIL ACTION NO. 03-1739** |
| **-vs-** | **JUDGE DRELL** |
| **RANDY MAXWELL, et al.** | **MAGISTRATE JUDGE KIRK** |

## R U L I N G

Before the Court is a motion for partial summary judgment (Doc. 99) filed by the plaintiffs, Lenward P. Hebert and Darnell A. Hebert, concerning the potential liability of defendants Sheriff Randy J. Maxwell (in his individual and official capacities) and Deputy Jim Boyd (in his individual and official capacities).[1]  The motion seeks partial summary judgment on the issues of the defendants' liability for Mr. Lenward P. Hebert's unlawful seizure/false arrest and liability for the conditions of confinement while he was being held at the Concordia Parish Jail from March 22, 2003 to March 24, 2003.  The motion is GRANTED IN PART on the issue of liability for false arrest and DENIED IN PART on the issue of liability for the conditions of confinement.

### SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure states that summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

---

[1] Sheriff Maxwell and Deputy Boyd are referred to simply as "the defendants" in this ruling. Although a third defendant, The Louisiana Sheriff's Law Enforcement Program, is apparently still a party to this suit, the plaintiff's motion does not address it.

> material fact and that the movant is entitled to judgment as a matter of law.

Id. A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2510-11 (1986). If the movant produces evidence tending to show there is no genuine issue of material fact, the nonmovant must then direct the Court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 321-23, 106 S. Ct. 2548, 2552 (1986)). In the analysis, all inferences are drawn in the light most favorable to the nonmovant. Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient to defeat a motion for summary judgment. Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 970 (5th Cir. 1992). Finally, "a mere scintilla [of evidence] is not enough to defeat a motion for summary judgment." Davis v. Chevron U.S.A., Inc., 14 F.3d 1082, 1086 (5th Cir. 1994) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

## ANALYSIS

The facts of this case are adequately set out in our ruling of September 30, 2005 (Doc. 69, pp. 2-6) and in the Fifth Circuit's opinion affirming in all respects that decision. See Hebert v. Maxwell, 214 Fed.Appx. 451, 452-53 (5th Cir. 2007). We need not repeat them here. There are only a few relevant additions to the record, discussed below in connection with the false arrest claim, and they are favorable to the plaintiffs.

2

## LIABILITY FOR FALSE ARREST

In our September 30, 2005 ruling, we declined to grant judgment as a matter of

law on the plaintiffs' false arrest claim, explaining:

> Mr. Hebert, who has the burden to show that Deputy Boyd lacked
> probable cause, asserts that Deputy Boyd lacked probable cause to arrest
> him for criminal trespass. Mr. Hebert's claim is based on the fact that the
> criminal trespass statute is a specific intent statute and he lacked the
> intent to trespass. (Doc. No. 39.) Deputy Boyd disagrees, claiming that he
> did have probable cause. Deputy Boyd cites reports suggesting Mr. Hebert
> was engaged in "suspicious activity"– the sign on Mr. Hebert's truck
> indicating he was a surveyor when in fact he was not, and the statement
> from Gene Tiffee that Mr. Hebert was trespassing (Doc. No. 43.) The Court
> does not consider Plaintiffs' evidence sufficient to show they are entitled
> to a judgment as a matter of law regarding the probable cause to arrest
> issue.   The pleadings and evidence before the Court leave too many
> unanswered questions for the Court to take such a definitive action.

> There are several significant issues the Court thinks remain
> unresolved. **First, there is no testimony from Gene Tiffee.** Clearly, his
> involvement in the incident alongside the highway, particularly as his
> involvement relates to the timing and sequence of the events surrounding
> the arrest, are crucial to the determination of whether Deputy Boyd had
> probable cause to arrest Mr. Hebert. Curiously, despite his importance to
> these events, neither party has provided any deposition testimony from the
> alleged landowner. **Additionally, there is no evidence locating the
> boundary line between the public highway and Mr. Tiffee's land.** During
> the oral argument held in this matter on September 8, 2005, defense
> counsel told the Court: "even as we stand here today, nobody knows, I
> don't know" where the boundary line is. (Oral arg. p. 23 ln 13-14.) The
> Court considers it peculiar that no one has investigated where the
> boundary line lies. . . .

* * *

> While the Court recognizes the strong similarities this case bears to
> Bodzin v. City of Dallas, 768 F.2d 722 (5th Cir. 1985), in which the Fifth
> Circuit determined that probable cause existed for an arrest despite a
> dispute regarding the boundary line between public and private property,
> significant differences between Bodzin and the matter before this Court
> preclude the Court from relying on Bodzin to make its determination. The
> principal difference involves the role the alleged landowner played in the

3

probable cause formulation.  See also <u>Kelley v. Myler,</u> 149 F.3d 641 (7th Cir. 1998); <u>Ryans v. Gresham,</u> 768 F.2d 722 (E.D. Tex. 1998).  In each of these cases, it was the complaining party, the party who asserted that the trespasser was on private property, who summoned the law enforcement officers to the scene.  In the case before the Court, the law enforcement officer summoned the so-called complaining party.

Since the evidence remains unclear about why Mr. Tiffee was summoned to the scene of the subsequent arrest, the Court declines to grant Plaintiffs' motion for summary judgment regarding the alleged lack of probable cause to arrest Mr. Hebert.  It is also not clear whether Deputy Boyd acted in good faith and reasonably thought he had probable cause to believe Mr. Hebert was actually trespassing.  Therefore, Defendants are not entitled to summary judgment on the issue of qualified immunity on this claim.

(Doc. 69, pp. 12-14) (emphasis added).

Our ruling was based on our finding that the evidence regarding lack of probable cause was clear enough to preclude qualified immunity but not clear enough to permit summary judgment.  Several things now counsel our granting the plaintiffs' motion for partial summary judgment regarding the defendants' liability for false arrest.  First, Mr. Tiffee's deposition has now been taken and excerpted for the record, and his involvement in the matter is now much clearer, though not entirely uncontroverted.  Second, Mr. Tiffee admits that the property outside the fence—the property that Mr. Hebert was parked on—was not Mr. Tiffee's property.  However, that fact is less relevant than it would otherwise be, in light of the third point: upon re-examining the Louisiana criminal trespass statute, La. R.S. § 14:63, as it existed at the time of Mr. Hebert arrest on March 22, 2003, we must conclude that Mr. Hebert has clearly demonstrated that Deputy Boyd lacked probable cause to arrest, because there was no evidence of Mr. Hebert's knowledge or intent to trespass at the time of his arrest.

4

First, Mr. Tiffee's deposition makes his involvement in the matter much clearer. For convenience, we refer to the defendants' statement of contested material facts (Doc. 103-15), which sets out each of the plaintiffs' material facts with which they disagree, as well as their response to it.  The relevant facts relating to Mr. Tiffee are as follows:

UNCONTESTED MATERIAL FACT # 4

Mr. Hebert's truck was parked off of Highway 907 and on a grassy area between a metal fence surrounding a pasture and the pavement of the highway. Mr. Hebert was parked alongside the road in a rural area.

DEFENDANTS' RESPONSE TO UNCONTESTED MATERIAL FACT # 4

Gene Tiffee signed a statement which stated that Mr. Hebert was trespassing.

* * *

UNCONTESTED MATERIAL FACT # 10

Deputy Boyd called the owner of the adjacent pasture, had him come to the area and had him sign an affidavit that Deputy Boyd had prepared, saying "Mr. Hebert was parked on Gene Tiffee['s] land at the intersection of La. 129 & 907 next to his cow pen."  The affidavit was not signed in the presence of a notary.

DEFENDANTS' RESPONSE TO UNCONTESTED MATERIAL FACT # 10

Gene Tiffee signed a document which stated that Mr. Hebert was trespassing.

UNCONTESTED MATERIAL FACT # 11

Deputy Boyd filled out the affidavit and told Gene Tiffee to sign it.  Gene Tiffee did not know that the affidavit would be used as a basis for Lenward Hebert to be arrested.  Gene Tiffee did not ask or tell Deputy Boyd to arrest Lenward Hebert.

DEFENDANTS' RESPONSE TO UNCONTESTED MATERIAL FACT # 11

Gene Tiffee signed a document which stated that Mr. Hebert was trespassing. This signature was the basis for Deputy Boyd's reasonable arrest of Lenward Hebert.

UNCONTESTED MATERIAL FACT # 12

In his November 7, 2007, deposition, Gene Tiffee acknowledged that he did not own the land between the metal fence surrounding the pasture and the pavement of the Highway and he also acknowledged that he never told Lenward Hebert to leave.

DEFENDANTS' RESPONSE TO UNCONTESTED MATERIAL FACT # 12

On March 22, 2003, Gene Tiffee signed a statement which alleged that Mr. Hebert was trespassing on Tiffee's land. Additionally, Mr. Tiffee told Deputy Boyd that he wanted to press charges because Mr. Hebert was on Tiffee's land.

(Doc. 103-15, pp. 1-3).

Although the defendants claim that these facts are contested, they only assert in response that Mr. Tiffee signed a document on March 22, 2003, a self-styled affidavit that was the basis for the subsequent arrest. (Doc. 99-5, p. 45). Since the plaintiffs do not dispute that Mr. Tiffee signed the affidavit (indeed, that document is why Mr. Tiffee is relevant at all), the defendants have not actually controverted those statements by the plaintiffs as required by LR56.2. Accordingly, they are deemed admitted, with one exception: the only fact which is actually contested regarding Mr. Tiffee is whether he told Deputy Boyd that he wanted to press charges against Mr. Hebert for trespassing.

Based on the plaintiffs' statement of uncontested facts, we accept as true that Deputy Boyd arrived at the scene alone and questioned Mr. Hebert; that Deputy Boyd had already been shown, inter alia, Mr. Hebert's chauffeur's license, his Louisiana private investigator's license, and his Louisiana Department of Public Safety license for

6

tinted windows; that Deputy Boyd summoned Mr. Tiffee to the area; that Deputy Boyd filled out the affidavit for Mr. Tiffee to sign, including an assertion that Mr. Hebert "committed the crime of trespassing in violation of LA. R.S. 14:63" (Doc. 99-5, p. 45; underlined portions handwritten); and that Mr. Tiffee signed the affidavit, on the basis of which Deputy Boyd arrested Mr. Hebert.  One final point is that although in our September 30, 2005 ruling we stated that there was no evidence of whether Mr. Tiffee owned the land on which Mr. Hebert was parked, Mr. Tiffee has since stated that he did not own the land outside his fence, i.e., the land in question. (Doc. 99-5, pp. 35-36; Tiffee deposition, pp. 25-27).

With those facts in mind, we turn to the false arrest claim.  In affirming our prior determination that Sheriff Maxwell and Deputy Boyd were not entitled to qualified immunity with respect to the plaintiffs' false arrest claim, the Fifth Circuit reasoned as follows:

> In Devenpeck v. Alford, 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004), the Court considered a claim of false arrest under the Fourth Amendment and concluded that a subjective analysis of the officer's state of mind is irrelevant to the analysis. Id. at 153, 125 S.Ct. 588. The only question is whether, given the facts known to the officer, he had probable cause to arrest the defendant for a crime. Id. Applying the Devenpeck standard in the qualified immunity context, the inquiry is whether, given the facts known to Boyd, he could have reasonably believed he had probable cause to arrest Hebert for any crime.
>
> Boyd and Maxwell point to three statutes under which Hebert could have been arrested: Criminal Trespass, La.Rev.Stat. 14:63 (1997) (amended 2003); Parking upon the Highway Shoulder, La.Rev.Stat. 32:296(a) (2002); and Blocking of Private Driveways, Highways and Department Rights of Way, La.Rev.Stat. 32:143.1 (2002).  The Criminal Trespass statute, as encoded at the time of Hebert's arrest, provided as follows:

B. No person shall intentionally enter immovable property owned by another:

(1) When he knows his entry is unauthorized, or

(2) Under circumstances where he reasonably should know his entry is unauthorized ...

C(2) It shall be an affirmative defense to a prosecution pursuant to Subsection B(2) to show that property was not adequately posted in accordance with Subsections D or E, and F of this Section.

...

E. In order for immovable property other than forest land to be adequately posted ... the owner ... shall post the property by ...

(3) Constructing a fence around the area to be posted....

La.Rev.Stat. 14:63 (1997) (amended 2003).

To convict a defendant of criminal trespass under this statute, the state must "prove an unauthorized intentional entry onto immovable property owned by another under circumstances where the person entering the property knows or reasonably should know the entry is unauthorized." State v. Davis, 540 So.2d 600, 602 (La.App. 5th Cir.1989). Boyd can point to no facts, other than reports of "suspicious activity," that are entirely unrelated to Tiffee's property, to suggest that Hebert had the intent to enter property belonging to another. Similarly, Boyd has pointed to no facts suggesting Hebert had reason to believe parking on the highway side of Tiffee's fence was unauthorized. Without any facts suggesting intent or knowledge, Boyd could not have had probable cause to believe Hebert was committing the crime of criminal trespass.

Hebert v. Maxwell, 214 Fed.Appx. 451, 454-55 (5th Cir. 2007).

In our September 30, 2005 ruling, we declined to grant summary judgment in favor of the plaintiffs on the issue of false arrest out of an abundance of caution, based on the absence of Mr. Tiffee's testimony and the absence of evidence concerning land

8

ownership.  Since that ruling, both of these evidentiary gaps have been filled with essentially uncontroverted evidence favoring the plaintiffs.  Although some facts in this matter remain in dispute (such as at what point Mr. Hebert offered to leave the area), they are not genuine issues of material fact and do not affect this analysis of whether Deputy Boyd had probable cause to arrest Mr. Hebert for trespassing.  As the Fifth Circuit noted, "Without any facts suggesting intent or knowledge, Boyd could not have had probable cause to believe Hebert was committing the crime of criminal trespass." 214 Fed.Appx. at 455.  Even with all the additional evidence, there is simply nothing in the record that would lead an objective, reasonable person to believe that Mr. Hebert had the requisite intent or knowledge to constitute criminal trespass.

The arrest took place on the narrow strip of land between a fenced pasture and a public road, and there was no sign or other indication that the area on which Mr. Hebert was parked was private property.  Mr. Hebert was sitting in his vehicle in broad daylight and did not attempt to flee when Deputy Boyd approached.  Instead, he stayed and answered Deputy Boyd's questions, although evidently not to the deputy's liking. Mr. Hebert soon presented ample identification, including his Louisiana private investigator's license.  On these facts, no objective, reasonable person could infer that Mr. Hebert had the intent to trespass or knowledge that he was trespassing.

This situation is roughly analogous to that in State v. Miller, 703 So. 2d 125 (La. App. 4 Cir. 1997):

> [T]he prosecution contends that the officer had probable cause to arrest the defendant for criminal trespass, a violation of Section 54-153 of the Code of the City of New Orleans.  The provisions of this ordinance are identical to the provisions of  LSA-R.S. 14:63, regarding the crime of

9

criminal trespass.  The prosecution asserts that the defendant's actions show that he knew his entry was not authorized.  However, the evidence adduced by the prosecution does not show that the defendant knew or reasonably should have known his entry was unauthorized.  The area the defendant entered in the Amtrak station admittedly was a public area.  According to the officer's testimony the facility was for the use of train passengers as well as bus passengers, and for patrons of the restaurant located in the building.  The facility who was not marked in such a way as to alert any member of the public as to who was excluded from its use.  The officer did not testify that the use of the facility was limited in any way; the officer did not testify that the defendant was engaging in any suspicious activity or loitering in the building.  All the defendant did was to enter the men's room, where apparently other men were congregated.  The defendant's refusal to answer the officer's questions concerning his presence, his insistence that the building was a public area, his assertion that he was going to get some water, belie the assertions of the prosecution that he knew his presence was unauthorized.  The defendant's statements to the officer, albeit not friendly and submissive, show that the defendant was annoyed by being asked questions in a public place where he considered he had a right to be.

State v. Miller, 703 So. 2d 125, 126 (La. App. 4 Cir. 1997).

Because Louisiana's criminal trespass statute, La. R.S. § 14:63, turned on the alleged trespasser's state of mind, i.e., intent or knowledge, as of March 22, 2003, and because Deputy Boyd had no facts indicating such intent or knowledge, the affidavit signed by landowner Gene Tiffee is irrelevant.  If Deputy Boyd lacked probable cause to believe that Mr. Hebert had the requisite intent or knowledge, the fact that Mr. Hebert might actually be on Mr. Tiffee's land was irrelevant.  Thus, the defendants cannot insulate themselves by pointing to the affidavit signed by Mr. Tiffee.  This is especially true in this case, since Mr. Tiffee was summoned by Deputy Boyd after Deputy Boyd had already spoken to Mr. Hebert; the affidavit was entirely prepared by Deputy Boyd; and it was signed by Mr. Tiffee at Deputy Boyd's request.  Deputy Boyd could not create probable cause out of thin air.

In short, the plaintiffs have presented ample evidence that Deputy Boyd lacked probable cause to arrest Mr. Hebert, and the defendants have failed to rebut that claim by pointing to facts at the time of his arrest demonstrating that Mr. Hebert possessed intent or knowledge as required by the version of the Louisiana criminal trespass statute, La. R.S. § 14:63, in effect on March 22, 2003.  Accordingly, the plaintiffs are entitled to judgment as a matter of law on the issue of the liability of Sheriff Maxwell and Deputy Boyd for the false arrest of Mr. Hebert.  The plaintiffs' motion for partial summary judgment will be GRANTED on this issue.

### LIABILITY FOR CONDITIONS OF CONFINEMENT

The second issue presented in the plaintiffs' motion for partial summary judgment concerns the defendants' liability for the plaintiffs' conditions of confinement claim.  This claim is clearly not subject to summary judgment, because the record is replete with genuine issues of material fact on this claim, including: whether he was adequately provided soap, toilet paper, a toothbrush, toothpaste, and an adequate place to sleep; the type and quality of food provided; the weight to give the testimony of prisoner Tyrone Jones, who was confined in the same holding cell from March 21, 2003 to March 22, 2002 and claims that there were no problems with the conditions; and the circumstances surrounding and significance of Mr. Hebert's statement in open court on Monday, March 24, 2003 that he was treated "very good" while in confinement.  These factual disputes go to the core of the plaintiffs' conditions of confinement claim; consequently, the plaintiffs' motion for partial summary judgment must be DENIED on that issue.

**CONCLUSION**

For the foregoing reasons, the plaintiffs' motion for partial summary judgment (Doc. 99) is GRANTED IN PART on the issue of the liability of Sheriff Randy Maxwell and Deputy Jim Boyd for the false arrest of Lenward Hebert on March 22, 2003.  A separate judgment to that effect accompanies this ruling.  The plaintiffs' motion is DENIED IN PART on the issue of liability for the conditions of confinement, the only other ground raised in the motion.

SIGNED on this _17_ day of April, 2008 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE